## DIAZ v. UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

No. 90.   Argued December 11, 12, 1911.—Decided January 15, 1912.

*Herrera* v. *United States, ante,* p. 558, followed as to the nature and effect of, and liability of the United States for, seizures and detention of vessels in Santiago harbor after the capitulation in 1898.

The President's proclamation of July 13, 1898, was not intended to supersede the laws of war, to interfere with the seizure, confiscation, or destruction of property necessary for the operation of war, or to attach to the necessary appropriation of such property by military officers the obligations and remedies of contracts.

43 Ct. Cl. 444, affirmed.

THE facts, which involve the jurisdiction of the Court

of Claims and the liability of the United States for the use of enemy vessels seized during the war with Spain, are stated in the opinion.

*Mr. Howard Thayer Kingsbury* and *Mr. Crammond Kennedy,* with whom *Mr. Frank D. Pavey* was on the brief, for appellants.

*Mr. Assistant Attorney General Thompson,* with whom *Mr. Franklin W. Collins* was on the brief, for the United States.

MR. JUSTICE MCKENNA delivered the opinion of the court.

This case was argued and submitted with No. 89, *Herrera* v. *United States,* just decided, *ante,* p. 558. As in that case the findings of fact recite the pendency of the war between the United States and Spain, the capitulation of Santiago and the cessation of hostilities in that district between the contending forces, the seizure and capture by the military authorities of the United States of the steamer Thomas Brooks, among other vessels and lighters, on the seventeenth day of July, 1898, she then being owned by claimants, and her use for the transportation of troops and munitions of war until September 6th of the same year, a period of fifty-seven days, the United States paying the cost of operating the steamer. Prior to her seizure she had been used to transport Spanish troops and munitions of war. The full and reasonable value of her use was $125 per day, amounting to the sum of $6,375, no part of which has been paid.

The other vessels seized and captured were small vessels and lighters, which were used for a time and later returned on the advice or opinion of the Judge-Advocate General of the Army. Their use was paid for by the Government on

some amicable terms. Also, after September 6, 1898, the claimants were, by some amicable agreement between them and the Quartermaster in charge at Santiago, permitted to use and operate the Thomas Brooks at their own expense, they agreeing to transport in her troops and munitions of war and other supplies at one-half the transportation rates. This was done, and the claimants were paid for the service.

On the eighteenth of January, 1899, after the vessel had been turned over to claimants, they executed a receipt and released all claims in the form set out in *Herrera et al.* v. *United States.*

It was also found by the court as follows, being No. 5 of the findings:

"At the same time, to wit, July 17, 1898, the military forces of the United States took possession of two wharves, the Muelle Lus and the San Jose, with their warehouses and sheds, belonging to claimants, and used the same for the purpose of loading, unloading and storing Government supplies, and in facilitating the movements of troops from July 17, 1898, to March 1, 1899, a period of seven and one-half months, for which use no rental was paid, though the claimants presented bills therefor monthly; and after the Government had surrendered the possession of said wharves the chief quartermaster, Department of Santiago, offered the claimants $4,000 in full payment for the use thereof during said period, which was refused; and later payment was denied on the ground that the claim was for unliquidated damages (see opinion Judge Advocate General, Dec. 23, 1901, page 83, Senate Doc. 318, 57th Congress, 1st Sess.). During said period said wharves were not used exclusively by the United States, but commercial steamers were permitted to land there and they were used by the merchants of the city of Santiago when such use did not interfere with the handling of Government stores. It does not appear that claimants received any

compensation from commercial steamers or merchants of the city for such use during said period.

"From time to time said wharves and warehouses were repaired by the United States, and claimant company was employed by the United States at $32 per day to dredge alongside of same for about three months. Said wharves were returned to claimants in nearly as good condition as when the United States took possession of them.

"The reasonable value of the use of said wharves and warehouses for the period they were used by the United States forces, together with any damage caused thereto by reason of said use, was $7,300."

The President's proclamation of July 13, 1898, is found as in the *Herrera Case.*

The Court of Claims dismissed the petition on the authority of *Hijo* v. *United States,* 194 U. S. 315, and the *Herrera Case.*

Claimants urge nothing in this case, because one of them is a British subject, except on the principles expressed in *The Venice,* and of those principles we have commented in the *Herrera Case.* Nor can much be urged on account of the settlement made by the officers of the United States with claimants for the services rendered after the surrender of the vessel and the settlement made for some smaller vessels and lighters, or the tender of payment of $4,000 by the Quartermaster at Santiago for the use of the wharves as set out in Finding V. Indeed, counsel say that "the intention to pay must be the officially declared intention of the Government, evidenced in the cases at bar by the rules and regulations prescribed by the President and promulgated by the Secretary of War in General Orders No. 101, and not the mere temporary mental processes of this or that subordinate officer who happened to be Quartermaster at the time and on the spot, and ignorant or disregardful of the law of the case as laid down by the President." The necessities of the case require claimants to

take that position; but we need not repeat what we said in No. 89 of those orders or of the proclamation. It is not possible to hold that the proclamation of the President was intended to supersede the laws of war and attach to every appropriation by the military officers conducting operations of war the obligations and remedies of contracts. It could not have been the intention of the President to prevent the seizure of property when necessary for military uses, or to prevent its confiscation or destruction. For the reasons for this conclusion we refer to the opinion in the *Herrera Case.*

*Judgment affirmed.*