**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**
**DIVISION ONE**

| | |
|---|---|
| SURINA CENTER LLC, | No. 83249-2-I |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| EMILY ANTON DBA THE BALLET AND MOVEMENT SCHOOL, | |
| Appellant. | |

CHUNG, J. — Emily Anton[1] leased space for a ballet studio. When the COVID-19 pandemic struck, she stopped making full rent payments in the amount stated in the lease, and her landlord sued. Because her lease was commercial, not residential, and because her landlord did not increase her rent during COVID-19, the provisions in the Governor's Proclamations that prohibit landlords from collecting unpaid rent and increasing rent during the pandemic did not apply. We affirm the trial court's grant of summary judgment to her landlord for back rent, fees, and costs per their lease.

---

[1] Emily Anton married Jason Knott and changed her name to Emily Anton Knott in the fall of 2021. Appellant self-identified as Emily Anton in trial court filings, so we use that name in this opinion to avoid confusion.

Citations and pin cites are based on the Westlaw online version of the cited material.

FACTS

Emily Anton leased space for her Ballet and Movement School for $850 per month from Surina Center on January 21, 2019. Early in 2020, the COVID-19 pandemic began. Governor Jay Inslee proclaimed a statewide moratorium on residential evictions on March 18, 2020 to mitigate the spread of COVID-19 and protect residents from homelessness. Proclamation 20-19.[2] The moratorium ended on June 30, 2021. Proclamation 20-19.6.[3] The Legislature enacted three statutes amending the Residential Landlord-Tenant Act to incorporate changes introduced by the Proclamations. RCW 59.18.620, .625, and .630.

Independently of the Governor's proclamations, Surina Center reduced all its tenants' rent by half for April and May 2020. Rent for all tenants returned to full lease rates in June 2020. Anton, however, continued paying half rent, $425 per month.

In June, Surina Center offered a compromise. If Anton would pay half, $425 per month, and Jason Knott would contribute another $150 per month, then Surina Center would defer $150 per month, and a payment plan for the total amount deferred would begin January 1, 2021. Anton refused this offer, stating "$425 a month is simply what I can do." In November, 2020, Surina Center's attorney sent Anton a letter asking for back rent, communication, and offering early

---

[2] Proclamation of Governor Jay Inslee, No. 20-19 (Wash. March 18, 2020) 20-19 - COVID-19 Moratorium on Evictions (tmp).pdf (wa.gov)

[3] Proclamation of Governor Jay Inslee, No. 20-19.6 (Wash. Mar. 18, 2021). https://www.governor.wa.gov/sites/default/files/proclamations/proc_20-19.6.pdf

termination. On November 22, 2020, Anton offered to vacate by December 15, 2020, provided she would owe no past due rent.

By December 3, 2020, a $3,825 outstanding balance accumulated. Surina Center served the required three-day notice for eviction on December 8, 2020. On December 21, 2020, Surina Center filed an unlawful detainer action seeking recovery of past due rent of $3,825 and attorney and late fees. In a declaration attached to the detainer motion, Surina Center's property manager, Dina Melic, declared "at no time have I observed anyone living in the Units. If I had . . . I would have immediately addressed and corrected the situation because the Lease does not allow for any residential use."

Anton, representing herself, filed a response to the show cause order and complaint. She claimed the eviction was illegal because she had informed Surina Center that COVID had substantially and materially affected her ballet business and Dina Melic knew that she, Jason Knott,[4] and another person were residing part time on the premises. She asserted the Governor's Proclamation as a defense and counterclaimed for repairs needed, retaliation, and intentional infliction of emotional distress by Surina Center's attorney. She attached a photo of her driver's license showing the address of the leased premises.

The court conducted a show cause hearing that began on Friday, January 8, 2021, and continued on Monday, January 11. On Friday, Anton testified that as

---

[4] Jason Knott's initial declaration was stricken. The record contains a second Jason Knott declaration given under penalty of perjury that is similar.

of January 1, 2021, her residence was a boat where she had live-aboard status. However, during 2020 she was waiting for that status, and she slept overnight at the leased premises on nights when she could not stay on the boat. When asked if there was any specific agreement with Surina Center to use the premises as a residence, Anton testified "[n]o." Anton also testified that she had "moved out of the unit now."

At the proceedings on the following Monday, Anton objected to the show cause hearing with a declaration that she had voluntarily vacated the premises over the weekend. She relinquished all right to possession of the premises. Consequently, the trial court issued an order converting the action from an unlawful detainer action, to which different procedures apply, to a civil action. Surina Center's claims for back rent, fees, and costs, as well as Anton's defenses and counterclaims for breach, intentional infliction of emotional distress, and retaliation, remained outstanding and unresolved.

Surina Center filed a motion for judgment as a matter of law, which the court denied. Surina Center subsequently moved for summary judgment, and the trial court held a hearing on that motion on July 9, 2021. The court granted Surina Center's motion and awarded it $3,250 in net back rent (after deducting a security deposit), $4,388 in attorney fees, and $312 in costs.[5] Anton appeals.

---

[5] Judgment and Order Granting Motion for Summary Judgment dated Sept 17, 2021 attached to Anton's notice of appeal.

DISCUSSION

Anton assigns three errors:[6] the denial of her right to a jury trial; the trial court's decisions that the "Governor's Orders against evictions did not apply"; and how "none of the staff at the [trial court] realized I potentially had a disability and may need accommodations." Surina Center argues the trial court's decisions on January 8, January 11, and July 9, 2021, determining that the Governor's Orders against evictions did not apply, are outside the scope of review because there were no written decisions on those days, and because Anton assigns error only to the trial court's final judgment.

Anton is a pro se litigant, and issues raised by pro se litigants may be addressed despite inadequate briefing where the nature of the issue is apparent. See State Farm Mut. Auto. Ins. Co. v. Avery, 114 Wn. App. 299, 310, 57 P.3d 300 (2002). Here, Anton's Notice of Appeal stated, "Defendant wants the whole decision reviewed," and she attached the trial court's "Judgment and Order Granting Motion for Summary Judgment." Her argument on summary judgment included argument on the issue of whether the Governor's Proclamation relating to evictions applied. Thus, the nature of the issue is apparent and subject to review.

On appeal of an order granting summary judgment, we review de novo whether "the pleadings, depositions, answers to interrogatories, and admissions

---

[6] Although the court's order on summary judgment also dismissed Anton's counterclaims, including retaliation, intentional infliction of emotional distress, and breach of the lease, Anton does not provide any argument on those issues on appeal. "We will not consider an inadequately briefed argument." Norcon Builders, LLC v. GMP Homes VG, LLC, 161 Wn. App. 474, 486, 254 P.3d 835 (2011).

on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c); see Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008).  We view all facts and reasonable inferences in the light most favorable to the nonmoving party.  Elcon Constr., Inc. v. E. Wash. Univ., 174 Wn.2d 157, 164, 273 P.3d 965 (2012).

A.  Right to a Jury Trial

Anton claims the trial court violated her right to a jury trial.  Both our State and federal constitutions guarantee the right to a jury trial in a civil suit. U.S. Const. amend. VII; Wash. Const. art. I, § 21.  But this right can be limited by procedural rules.

In Washington, our Supreme Court inherently has power to adopt procedural rules.  Emwright v. King County, 96 Wn.2d 538, 543, 637 P.2d 656 (1981) (citing State v. Edwards, 94 Wn.2d 208, 212, 616 P.2d 620 (1980)).  The Legislature also delegated procedural rule-making power to the court.  See e.g., RCW 2.04.190.  Using this power, courts have adopted rules including the Superior Court Civil Rules (CR).  "These rules govern the procedure in the superior court in all suits of a civil nature" and "shall be construed and administered to secure the just, speedy, and inexpensive determination of every action." CR 1.

CR 38 preserves "inviolate" our State's constitutional guarantee of a jury trial and sets out a process by which a party "may demand a trial by jury of any

issue triable of right." CR 38(a), (b). This does not mean that every case must be heard by a jury, however. CR 56 allows a party to file a motion for summary judgment, and the court may grant summary judgment without a trial if the evidence shows "there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." The purpose of the summary judgment procedure is to avoid an unnecessary trial when there is no genuine issue of material fact that requires a jury to decide. Jacobsen v. State, 89 Wn.2d 104, 108, 569 P.2d 1152 (1977).

Here, the civil rules of procedure permit Surina Center to move for summary judgment and test whether any triable issue exists. By applying CR 56 to grant summary judgment against her, the court did not deny Anton's right to a jury trial.

B. The Governor's COVID-19 Proclamation on Evictions and Related Housing Practices

Anton argues the Governor's Proclamation on Evictions and Related Housing Practices applied and prohibited Surina Center from taking certain actions against her, including seeking to evict her and collect unpaid rent and raising her rent. Surina Center contends that her claims are moot because she voluntarily vacated, and further, the Proclamation applies only to residential evictions, not commercial evictions.

We agree with Surina Center that any claim regarding eviction is both moot and, regardless, not properly before this court. Anton testified that she had surrendered possession of the premises, and Surina Center agreed. Thus,

because a writ of restitution was no longer being sought, the trial court converted the lawsuit to a civil action. An issue is moot if the court cannot provide effective relief. Herrera v. Villaneda, 3 Wn. App. 2d 483, 492, 416 P.3d 733 (2018). Anton does not appeal the trial court's determination that the eviction was no longer an issue, or its ruling converting the action from an unlawful detainer. But the issues of whether the Surina Center violated the Governor's Proclamation by seeking to collect on unpaid rent or by raising Anton's rent remain.

We look to the relevant language in the Governor's Proclamation. We interpret gubernatorial proclamations in the same way as statutes. Dzaman v. Gowman, 18 Wn. App. 2d 469, 478, 491 P.3d 1012 (2021) (citing State v. Zack, 2 Wn. App. 2d 667, 672 & n.6, 413 P.3d 65 (2018)). Statutory construction is a question of law that this court reviews de novo. Lee v. State, 185 Wn.2d 608, 614, 374 P.3d 157 (2016). The primary goal of interpretation is to determine and give effect to the drafter's intent. Dzaman, 18 Wn. App. 2d at 478. If a statute's meaning is plain on its face, courts give effect to that plain meaning as an expression of legislative intent. Quinault Indian Nation v. Imperium Terminal Servs., LLC, 187 Wn.2d 460, 468, 387 P.3d 670 (2017).

1. Prohibition on Collection of Unpaid Rent

The Governor's Proclamation prohibits landlords from "treating any unpaid rent or other charges related to a dwelling or parcel of land occupied as a dwelling as an enforceable debt or obligation that is owing or collectable, where such non-payment was as a result of the COVID-19 outbreak and occurred on or after

February 29, 2020." Proclamation 20-19.5. This prohibition does not apply to landlords who demonstrate they offered a reasonable re-payment plan that the resident refused or failed to comply with. Id.

Because this prohibition applies only to "unpaid rent or other charges related to a dwelling," we must determine whether the leased premises was "a dwelling." The applicable definition of a "dwelling unit" is "a structure or that part of a structure which is used as a home, residence, or sleeping place by one person or by two or more persons maintaining a common household, including but not limited to single-family residences and units of multiplexes, apartment buildings, and mobile homes." RCW 59.18.030(10).[7]

Anton argues that the studio was a residential dwelling because she and others stayed overnight at times, as they could not stay onboard her boat before she had live-aboard status. But the lease states at the bottom of every page that it is a "Lease for Commercial Space" and "shall be used for . . . [a] Ballet Studio/Office business and activities thereto and for no other purpose without the prior consent of [the] Landlord." (Emphasis supplied.) Anton admitted the written agreement was not modified to allow use as a residence. Thus, the record establishes the allowed use was purely commercial, not residential. The

---

[7] The Governor's Proclamation states, "Terminology used in these prohibitions shall be understood by reference to Washington law, including but not limited to RCW 49.60, RCW 59.12, RCW 59.18, and RCW 59.20." Proclamation 20-19.5. RCW 59.18 is the Residential Landlord-Tenant Act (RLTA). RCW 59.18.010.

protections in the Governor's Proclamation from collection of unpaid rent do not apply to Anton's lease.

2. Prohibition on Increasing Rent

The Governor's Proclamation prohibits increases in rent for certain commercial properties, as well as for residential dwellings:

> Except as provided in this paragraph, landlords, property owners, and property managers are prohibited from increasing, or threatening to increase, the rate of rent for any dwelling or parcel of land occupied as a dwelling . . . [and] this prohibition also applies to commercial rental property if the commercial tenant has been materially impacted by the [sic] COVID-19, whether personally impacted and is unable to work or whether the business itself was deemed non-essential pursuant to Proclamation 20-25 or otherwise lost staff or customers due to the COVID-19 outbreak. This prohibition does not apply to commercial rental property if rent increases were included in an existing lease agreement that was executed prior to February 29, 2020 (pre-COVID-19 state of emergency).

Proclamation 20-19.5.[8]

Here, Anton argues that ending Surina Center's voluntary rent reduction constitutes an increase in rent. The record shows the lease, signed on January 21, 2019, set the rent at $850.01 per month, may not be modified except in writing, prohibits waiver except in writing, and specifies the acceptance of rent after default does not constitute waiver. Surina Center voluntarily reduced rent by half for all its tenants for April and May 2020. The record also shows the reduction was for those two months only, and regular rent resumed in June 2020. There was no

---

[8] Surina Center does not dispute that Anton was a "commercial tenant [who] has been materially impacted by the [sic] COVID-19."

mutual agreement to modify the original lease from the stated rent of $850 per month.  Though Surina Center voluntarily reduced the rent temporarily, it did not alter the lease agreement otherwise.  Thus, Anton does not raise a genuine issue of material fact that Surina Center increased her rent during COVID-19.[9]

Therefore, the trial court properly granted summary judgment in favor of Surina Center's claim for back rent, attorney fees, and costs according to the parties' lease.[10]

C.  Claim Regarding Accommodations for Disability

Anton assigns error because "none of the staff at the San Juan County Court realized that I potentially had a disability and may need accommodations." She quotes an Access to Justice Board publication titled "Ensuring Equal Access for People with Disabilities, A Guide for Washington Administrative Proceedings." She compares its suggestions with her interactions with the trial court and, because the publication mentions the Americans with Disabilities Act (ADA), she appears to suggest the trial court violated the ADA by not following the publication's suggestions.

"As a general rule, appellate courts will not consider issues raised for the first time on appeal."  State v. McFarland, 127 Wn.2d 322, 332-33, 899 P.2d 1251

---

[9] Anton also voluntarily abandoned this lease, thus relinquishing her claim to be operating a ballet business affected by COVID-19 on the premises.

[10] Anton did not challenge the trial court's fee award, and thus, we do not consider it on appeal. Norcon Builders, LLC v. GMP Homes VG, LLC, 161 Wn. App. 474, 486, 254 P.3d 835 (2011) ("We will not consider an inadequately briefed argument.").  Because we hold that the underlying summary judgment order in Surina Center's favor was proper, we do not disturb the fee award.

(1995). Pro se litigants are "bound by the same rules of procedure and substantive law as attorneys." Westberg v. All-Purpose Structures Inc., 86 Wn. App. 405, 411, 936 P.2d 1175 (1997).

Here, the issue Anton suggests was never before the trial court; therefore, we decline to review it on appeal because the trial court made no ruling or decision for this court to review. Anton argues that statements she made about not understanding, for example, the significance of her commercial lease, clearly indicated a cognitive disability. She argues answers she gave the court when it asked if she had any questions, such as "no, nothing," are evidence of "false answers" characteristic of litigants with cognitive impairments. She argues the court "interrupted me multiple times and got frustrated with me" when the court probed for specific evidence to create a genuine issue of material fact. Reviewing the record where Anton suggests, we recognize the many challenges faced by a pro se litigant. Nonetheless, Anton never directly raised the need for accommodation to the trial court, much less requested any specific accommodation. As there is no decision regarding accommodation for this court to review, we decline to consider this claim.

We affirm.

_Chung, J._

WE CONCUR:

_Díaz, J._

_Mann, J._

-12-