(Slip Opinion)

# The Scope of State Criminal Jurisdiction over Offenses Occurring on the Yakama Indian Reservation

In partially retroceding the criminal jurisdiction that it had obtained under Public Law 280, the State of Washington retained criminal jurisdiction over an offense on the Yakama Indian Reservation when the defendant or the victim is a non-Indian, as well as when both are non-Indians.

July 27, 2018

MEMORANDUM OPINION FOR THE PRINCIPAL DEPUTY SOLICITOR
DEPARTMENT OF THE INTERIOR

You have asked us to examine the scope of state criminal jurisdiction on the Yakama Indian Reservation in the State of Washington. Specifically, you have asked whether Washington, in retroceding criminal jurisdiction to the United States over offenses on the reservation involving Indians, retained jurisdiction over criminal offenses only when both the defendant and the victim are non-Indians, or also when either the defendant or the victim is a non-Indian.[1]

In 1963, Washington assumed jurisdiction over criminal offenses on the Yakama Reservation under Public Law 280, a 1953 federal statute. *See* Pub. L. No. 83-280, § 7, 67 Stat. 588. In 2014, the Governor of Washington partially retroceded that jurisdiction in a proclamation accepted by the United States. *See* Acceptance of Retrocession of Jurisdiction for Yakama Nation, 80 Fed. Reg. 63,583, 63,583 (Oct. 20, 2015) ("Retrocession Acceptance"); *see also* 25 U.S.C. § 1323(a). Your question turns on the interpretation of the Governor's proclamation in light of the federal statutory framework.

The two pertinent paragraphs of the Governor's proclamation addressing Washington's partial retrocession of criminal jurisdiction both state that, "[w]ithin the exterior boundaries of the Yakama Reservation," Washington retains "jurisdiction over criminal offenses involving non-

---

[1] Although your request also refers to civil jurisdiction, you note that you are making your request for "the sake of enhanced public safety," which we understand from separate discussions to be the primary concern animating your inquiry. Letter for Steven A. Engel, Assistant Attorney General, Office of Legal Counsel, from Daniel H. Jorjani, Principal Deputy Solicitor, Department of the Interior, *Re: Scope of Federal Jurisdiction on the Yakama Indian Reservation* at 1 (Mar. 30, 2018) ("Request Letter"). We therefore focus on criminal jurisdiction, although aspects of our analysis touch upon civil jurisdiction.

Indian defendants and non-Indian victims." Proclamation by the Governor 14-01, ¶¶ 2, 3, at 2 (Jan. 17, 2014) ("Proclamation 14-01"). In a letter transmitting the proclamation to the Department of the Interior ("DOI"), the Governor explained that "the intent" in the relevant paragraphs "is for the State to retain jurisdiction . . . where *any* party is a non-Indian." Letter for Kevin Washburn, Assistant Secretary of Indian Affairs, DOI, from Jay Inslee, Governor, State of Washington, *Re: Yakama Nation Retrocession Petition* at 2 (Jan. 27, 2014) ("Gov. Inslee Letter").[2] In notifying the Confederated Tribes and Bands of the Yakama Nation ("Yakama Nation") of the United States' acceptance of the retrocession, DOI stated that, with respect to "the extent of retrocession," the proclamation was "plain on its face and unambiguous," but DOI did not set out its view of that plain meaning. Letter for JoDe Goudy, Chairman, Yakama Nation Tribal Council, from Kevin K. Washburn, Assistant Secretary, DOI at 5 (Oct. 19, 2015) ("2015 DOI Letter").[3]

In a November 2016 guidance memorandum, DOI's Bureau of Indian Affairs ("BIA") took the position that, under the proclamation, Washington had retained criminal jurisdiction on the Yakama Reservation only over those cases in which *both* the defendant *and* the victim are non-Indian. Memorandum for Darren Cruzan, Director, Office of Justice Services, from Lawrence S. Roberts, Principal Deputy Assistant Secretary, BIA, *Re: Guidance to State, Local, and Tribal Enforcement Agencies on Yakama Retrocession Implementation* at 1 (Nov. 30, 2016) ("BIA Guidance"). In the letter requesting our opinion, DOI now "concedes the scope of jurisdiction retroceded by the State is somewhat ambiguous," but otherwise stands by the interpretation set forth in the 2015 DOI Letter and the 2016 BIA Guidance.[4] Request Letter at 1.

---

[2] Washington reiterated this position in later correspondence, *see* Letter for Sally Jewell, Secretary of the Interior, from Gov. Jay Inslee (Apr. 19, 2016), and in state prosecutions, *see, e.g.*, *State v. Zack*, 413 P.3d 65, 70 (Wash. Ct. App. 2018), *petition for review filed*, No. 95792-4 (Wash. Apr. 9, 2018).

[3] The proclamation, Governor Inslee's transmittal letter, and the 2015 DOI Letter are all reprinted as appendices to the decision in *Zack*. *See* 413 P.3d at 71–81.

[4] The scope of criminal jurisdiction on the Yakama Reservation implicates the interests of the Environmental and Natural Resources Division ("ENRD"), *see* 28 C.F.R. § 0.65(b) (delegating to ENRD responsibility for "all civil ligation . . . pertaining to Indians, Indian tribes, and Indian affairs); the Office of Tribal Justice ("OTJ"), *see id.* § 0.134(b) (designating OTJ as "the principal point of contact . . . to listen to the concerns of Indian Tribes and other parties interested in Indian affairs"); and the United States Attorney's Office for the Eastern District of Washington ("USAO"), where the reservation is located. These

Having considered the language of the proclamation and the relevant context, we conclude that the interpretation offered by Washington is the correct one. This conclusion is consistent with the only published judicial decision directly addressing this issue. *See State v. Zack*, 413 P.3d 65, 70 (Wash. Ct. App. 2018), *petition for review filed*, No. 95792-4 (Wash. Apr. 9, 2018).

## I.

We begin with a brief overview of federal, state, and tribal criminal jurisdiction on Indian reservations before turning to the jurisdiction Washington assumed under Public Law 280 and then partially retroceded.

## A.

Congress has defined "Indian country" as including, in part, "all land within the limits of any Indian reservation under the jurisdiction of the United States Government." 18 U.S.C. § 1151(a). "Criminal jurisdiction over offenses committed in 'Indian country' is governed by a complex patchwork of federal, state, and tribal law." *Negonsott v. Samuels*, 507 U.S. 99, 102 (1993) (internal quotation marks and citation omitted). The federal government's criminal jurisdiction derives primarily from the General Crimes Act, 18 U.S.C. § 1152, and the Major Crimes Act, *id.* § 1153. The General Crimes Act makes applicable in Indian country those federal criminal statutes that are applicable in places, other than the District of Columbia, under the exclusive jurisdiction of the United States.

---

components submitted views on the issue to the Deputy Attorney General ("DAG") and the Solicitor General in 2016. *See* Memorandum for the Deputy Attorney General and the Acting Solicitor General, from Sam Hirsch, Principal Deputy Assistant Attorney General, ENRD, *Re: State and Federal Criminal Jurisdiction on the Yakama Reservation* (Nov. 23, 2016) ("ENRD Memorandum"); Memorandum from Tracy Toulou, Director, OTJ, *Re: Yakama Retrocession* (Dec. 23, 2016) ("OTJ Memorandum"). In connection with this opinion request, we offered each component the chance to supplement its views. *See* E-mail for Daniel L. Koffsky, Deputy Assistant Attorney General, Office of Legal Counsel, from Eric Grant, Deputy Assistant Attorney General, ENRD, *Re: Yakama Materials Due 4/2 to Dan Koffsky* (Apr. 2, 2018 4:37 PM); E-mail for Daniel L. Koffsky, Deputy Assistant Attorney General, Office of Legal Counsel, from Tracy Toulou, Director, OTJ, *Re: Yakama* (Apr. 2, 2018 5:03 PM) ("OTJ E-mail"); Memorandum for Daniel L. Koffsky, Deputy Assistant Attorney General, Office of Legal Counsel, from Joseph H. Harrington, United States Attorney, Eastern District of Washington, *Re: Yakama Nation Jurisdiction Issue* (Apr. 2, 2018).

*Id*. § 1152. It does not apply to "offenses committed by one Indian against the person or property of another Indian," *id*.—a category of cases over which the tribe will generally retain exclusive jurisdiction, *see United States v. Lara*, 541 U.S. 193, 204–05 (2004). The Major Crimes Act, however, provides for federal jurisdiction over an Indian who has committed, in Indian country, any of the serious crimes on an enumerated list, whatever the status of the victim. 18 U.S.C. § 1153.

In the absence of federal legislation providing otherwise, Indian tribes generally have—and States generally do not have—criminal jurisdiction over Indians within Indian reservations.[5] *See Lara*, 541 U.S. at 199–200; *Solem v. Bartlett*, 465 U.S. 463, 465 n.2 (1984). Indian tribes, however, have no "inherent jurisdiction to try and to punish non-Indians." *Oliphant v. Suquamish Indian Tribe*, 435 U.S. 191, 212 (1978). Although no statute speaks precisely to the question, the Supreme Court has concluded that a State has criminal jurisdiction over a non-Indian who commits a crime against a non-Indian on an Indian reservation within that State. *See, e.g.*, *New York ex rel. Ray v. Martin*, 326 U.S. 496, 500 (1946); *Draper v. United States*, 164 U.S. 240, 242–43 (1896); *United States v. McBratney*, 104 U.S. 621, 624 (1882). "As a practical matter, this has meant that criminal offenses by or against Indians have been subject only to federal or tribal laws, except where Congress in the exercise of its plenary and exclusive power over Indian affairs has expressly provided that State laws shall apply." *Washington v. Confederated Bands & Tribes of the Yakima Indian Nation*, 439 U.S. 463, 470–71 (1979) ("*Yakima Indian Nation*") (internal quotation marks and citation omitted).

## B.

Against this backdrop of overlapping federal and tribal jurisdiction, Congress enacted Public Law 280 "in part to deal with the problem of lawlessness on certain Indian reservations, and the absence of adequate tribal institutions for law enforcement." *Yakima Indian Nation*, 439 U.S. at 471. Although earlier legislation had conveyed jurisdiction to certain States in specific circumstances, Public Law 280 "was the first federal

---

[5] The Yakama Reservation includes both land that is held in trust by the United States for the benefit of the Yakama Nation or its individual members (or otherwise restricted for sale by the United States) and land that is owned in fee by Indians or non-Indians. *See Brendale v. Confederated Tribes & Bands of the Yakima Indian Nation*, 492 U.S. 408, 415 (1989).

jurisdictional statute of general applicability to Indian reservation lands." *Yakima Indian Nation*, 439 U.S. at 471; *see id.* at 471 n.8 (citing earlier statutes).

Public Law 280 provided for additional state criminal jurisdiction in two ways. First, it provided that five (and later six) named States "shall have jurisdiction over offenses committed by or against Indians" in certain specified areas "to the same extent that such State has jurisdiction over offenses committed elsewhere within the State," and that "the criminal laws of such State shall have the same force and effect within such Indian country as they have elsewhere within the State." 18 U.S.C. § 1162(a). In the areas where the named States obtained mandatory jurisdiction, Public Law 280 made the General Crimes Act and Major Crimes Act inapplicable. *See id.* § 1162(c).

Second, for other States, including Washington, Public Law 280 offered an alternative path to jurisdiction by providing the "consent of the United States" for "any other State . . . to assume jurisdiction at such time and in such manner as the people of the State shall, by affirmative legislative action, obligate and bind the State to assumption thereof." Pub. L. No. 83-280, § 7, 67 Stat. at 590. Through action of its legislature, a State could therefore "unilaterally extend[] full jurisdiction over crimes and civil causes of action" occurring on an Indian reservation. *Yakima Indian Nation*, 439 U.S. at 499. Such a State could also choose to assume only part of the offered jurisdiction, limiting either the geographical reach or subject matters of its jurisdiction. *Id.* at 496–97.

Washington opted to assume some jurisdiction under Public Law 280. In 1963, the State enacted legislation generally assuming criminal and civil jurisdiction "over Indians and Indian territory, reservations, country, and lands in accordance with [Public Law 280]." Wash. Rev. Code Ann. § 37.12.010 (West 2003). But this general assumption of jurisdiction explicitly did "not apply to Indians . . . when on their tribal lands or allotted lands within an established Indian reservation and held in trust by the United States or subject to a restriction against alienation imposed by the United States" unless certain subject matters were involved.[6] *Id.* The Yakama Reservation accordingly was brought under state criminal jurisdiction according to the terms of this statute: Washington assumed

---

[6] The subject matters over which Washington assumed more extensive jurisdiction were "(1) Compulsory school attendance; (2) Public assistance; (3) Domestic Relations; (4) Mental illness; (5) Juvenile delinquency; (6) Adoption proceedings; (7) Dependent Children; and (8) Operation of motor vehicles." Wash. Rev. Code Ann. § 37.12.010.

general criminal jurisdiction over Indians and non-Indians alike on fee land within the Yakama Reservation but did not assume general jurisdiction over Indians on trust or restricted land, where it took on only narrowly specified jurisdiction.[7] *Id.*; *see also Yakima Indian Nation*, 439 U.S. at 475–76.

In 1968, Congress amended Public Law 280 and repealed the option for additional States to assume jurisdiction. 25 U.S.C. § 1323(b). For Washington and other States that had already assumed jurisdiction, Congress authorized the United States to "accept a retrocession by [the] State of all or any measure" of the jurisdiction previously acquired. *Id.* § 1323(a). The President delegated the authority to accept such a retrocession to the Secretary of the Interior, in consultation with the Attorney General. Exec. Order No. 11435 (Nov. 21, 1968), 33 Fed. Reg. 17,339 (Nov. 23, 1968).

In 2012, Washington adopted a law by which an Indian tribe can request that the State retrocede its Public Law 280 jurisdiction to the United States. *See* Wash. Rev. Code Ann. § 37.12.160 (West Supp. 2018). A tribe must submit a petition for retrocession, and the Governor is then authorized to issue a proclamation "approving the request either in whole or in part." *Id.* § 37.12.160(4).

The Yakama Nation submitted a petition on July 17, 2012, requesting "full retrocession of civil and criminal jurisdiction on all of Yakama Nation Indian country" and in five of the subject matters where the State had specifically assumed jurisdiction. *See* Proclamation 14-01, at 1. Governor Inslee issued a proclamation on January 17, 2014, granting in part and denying in part the Yakama Nation's petition. *See id.* at 2. On October 19, 2015, DOI accepted that proclamation on behalf of the United States. *See* Retrocession Acceptance, 80 Fed. Reg. at 63,583.

## II.

The scope of Washington's retrocession of criminal jurisdiction on the Yakama Reservation is controlled by the terms of the Governor's 2014 proclamation, as accepted by the United States. Relying on the text of the

---

[7] As ENRD notes, under a Washington Supreme Court decision, only members of the Yakama Nation are considered "Indians . . . on their tribal lands or allotted lands" for purposes of section 37.12.010; Indians from other tribes are accordingly subject to Washington's general criminal jurisdiction even on the lands specified in the statute. *See* ENRD Memorandum at 6 n.20 (citing *State v. Shale*, 345 P.3d 776 (Wash. 2015)).

proclamation itself and the applicable law, we conclude that Washington has retained jurisdiction over criminal offenses where any party is a non-Indian, as the Washington Court of Appeals recently held in *State v. Zack*, 413 P.3d at 70.[8] The extrinsic evidence also strongly supports this conclusion.

## A.

The paragraphs in the retrocession proclamation directly pertaining to your inquiry provide as follows:

> 2. Within the exterior boundaries of the Yakama Reservation, the State shall retrocede, in part, civil and criminal jurisdiction in Operation of Motor Vehicles on Public Streets, Alleys, Roads, and Highways cases in the following manner: Pursuant to RCW 37.12.010(8), the State shall retain jurisdiction over civil causes of action involving non-Indian plaintiffs, non-Indian defendants, and non-Indian victims; *the State shall retain jurisdiction over criminal offenses involving non-Indian defendants and non-Indian victims*.

> 3. Within the exterior boundaries of the Yakama Reservation, the State shall retrocede, in part, criminal jurisdiction over all offenses not addressed by Paragraphs 1 and 2. *The State retains jurisdiction over criminal offenses involving non-Indian defendants and non-Indian victims*.

Proclamation 14-01, ¶¶ 2–3, at 2 (emphasis added).[9]

BIA Guidance issued in 2016 interprets paragraphs 2 and 3 of the proclamation to mean that "Washington State retains jurisdiction only over civil and criminal causes of action in which no party is an Indian." BIA Guidance at 1. The BIA Guidance does not explain the reasoning that led to this conclusion, but it appears to rest on reading the "and" that appears

---

[8] As we explain above, Washington did not claim all of the jurisdiction that Public Law 280 would have permitted. For example it did not assume jurisdiction over certain crimes committed by Indians against Indians on trust or restricted lands. In defining jurisdiction retained in criminal matters involving certain parties, the proclamation naturally did not "retain" any jurisdiction that Washington had never assumed.

[9] In paragraph 1 of the operative section of the proclamation, Washington retroceded "full civil and criminal jurisdiction in" four subject matters: "Compulsory School Attendance; Public Assistance; Domestic Relations; and Juvenile Delinquency." Proclamation 14-01, ¶ 1, at 2.

between references to "non-Indian defendants" and references to "non-Indian victims" as requiring *each* party to be non-Indian for Washington to retain jurisdiction. ENRD, taking the same position as the Governor of Washington and the Washington Court of Appeals in *Zack*, instead reads "and" to signify that Washington has jurisdiction if *any* listed party is a non-Indian. *See* ENRD Memorandum at 21–23; Gov. Inslee Letter at 1–2; *Zack*, 413 P.3d at 69.

The dispute thus centers on how to interpret "and" in paragraphs 2 and 3 of the proclamation. In one typical usage, which BIA would apply here, "and" connects two elements that must both be present for the larger statement to obtain. *See Webster's Third New International Dictionary* 80 (1993) (def. 4). This usage of "and" is often said to be logically "conjunctive." *See id.* (cross-referencing "conjunction"); *see also id.* at 480 (def. 7a of "conjunction"). When the Constitution provides that "No Person shall be a Representative who shall not have attained to the Age of twenty five Years, and been seven Years a citizen," U.S. Const. art. I, § 2, cl. 2, it is specifying just such a conjunctive relationship: both the condition of twenty-five years of age and the condition of seven years of citizenship must be present for a person to be a Representative.

There is, however, another potential reading of "and." Governor Inslee has described his use of "and" in the disputed sentences as meaning "and/or," Gov. Inslee Letter at 2, a formulation "denoting that the items joined by it can be taken either together or as alternatives." 1 *Oxford English Dictionary* 449 (2d ed. 1989) (*conj.*[1] def. B.I.3.c). That, too, is an established usage of "and." *See, e.g., Webster's Third New International Dictionary* at 80 (def. 2(6): "used as a function word to express . . . reference to either or both of two alternatives . . . esp. in legal language when also plainly intended to mean *or*"). That usage is often said to be "disjunctive," but it would be more precise to describe it as an example of an "inclusive disjunction," in which either element or both elements can be present. *Id.* at 651 (def. 2 of "disjunction"). For instance, when the Constitution states that "Congress shall have Power . . . To declare War, grant Letters of Marque and Reprisal, and make Rules concerning Captures on Land and Water," U.S. Const. art. I, § 8, cl. 11, the authorizations are disjunctive in the sense that Congress may declare war without granting letters of marque and reprisal, but inclusive in the sense that Congress might choose to enact all three kinds of measures or any combination of them. Similarly, in the context of Public Law 280 itself, the Supreme Court has construed the authorization of state assumption of

"civil and criminal jurisdiction" as permitting a State to assume civil *or* criminal jurisdiction *or* both. *See Zack*, 413 P.3d at 69 n.10 (citing *Yakima Indian Nation*, 439 U.S. at 496–97); *see also* ENRD Memorandum at 23 (same).[10]

As we have previously observed, "[d]etermining which usage [of 'and'] was intended in a particular provision requires . . . an examination of the context in which the term appears." *Whether False Statements or Omissions in Iraq's Weapons of Mass Destruction Declaration Would Constitute a "Further Material Breach" Under U.N. Security Council Resolution 1441*, 26 Op. O.L.C. 217, 219 (2002); *see Territorial Legislature*, 18 Op. Att'y Gen. 540, 540 (1887) ("It is right to interpret the word 'and' with a disjunctive meaning when such meaning entirely coincides with the rest of the statute and with the evident intention of the legislature."). Accordingly, we turn to an examination of the proclamation as a whole.

We start by examining the immediate context in which "and" appears. The proclamation provides that the State retains jurisdiction over "criminal offenses involving non-Indian defendants and non-Indian victims." The use of the plural throughout this sentence provides some support to the meaning that the Governor understands the sentence to convey. The phrase "criminal offenses involving" is followed by two different categories of offenses (those involving non-Indian defendants *and* those involving non-Indian victims). By contrast, describing the State as retaining "jurisdiction over *a* criminal offense involving *a* non-Indian defendant and *a* non-Indian victim" would have been a more natural way to point toward the BIA's interpretation, which would cover only the category of cases in which each case had both a non-Indian defendant and a non-Indian victim.

By itself, this immediate context, while suggestive, is not decisive. But when the proclamation is considered as a whole and in the context of the petition that the Yakama Nation submitted to the Governor, the meaning of "and" comes into a sharper focus that decidedly favors the Governor's

---

[10] Although legal drafters are often warned against interchanging "and" with "or," *see* Bryan A. Garner, *Garner's Dictionary of Legal Usage* 56 (3d ed. 2011), they have often failed to heed the warning, *see, e.g.*, *Webster's New International Dictionary* 98 (2d ed. 1943) (def. 1.f of "and": "In legal language *and* is interpreted as if it were *or*, and vice versa, whenever this construction is plainly required to give effect to the intention of the person using it."). Like others interpreting legal provisions, we must recognize that the disfavored usage may be the one that the drafter intended.

view. Under the state law that authorized the retrocession, upon receipt of a petition, the Governor had to "issue a proclamation, if approving the request either in whole or in part." Wash. Rev. Code Ann. § 37.12.160(4). The petition of the Yakama Nation, and subsequent government-to-government meetings, asked "the State to retrocede all jurisdiction" that Washington had assumed "over the Indian country of the Yakama Nation" pursuant to Public Law 280. Proclamation 14-01, at 1–2. The proclamation itself, after a series of *whereas* clauses, declares Governor Inslee's determination to "grant in part, and deny in part, the retrocession petition." *Id*. at 2. Paragraphs 2 and 3 both explain that the State is retroceding "in part" certain criminal jurisdiction "[w]ithin the exterior boundaries of the Yakama Reservation" and that it is "retain[ing] jurisdiction over criminal offenses involving non-Indian defendants and non-Indian victims." *Id*.

The proclamation expressly declined to retrocede some of the jurisdiction over the Yakama Reservation that Washington had assumed under Public Law 280. But, as noted above, the States already had jurisdiction, quite apart from Public Law 280, over crimes committed on Indian reservations by non-Indians against non-Indians. *See Martin*, 326 U.S. at 500; *Draper*, 164 U.S. at 242–43; *McBratney*, 104 U.S. at 624. If we were to read the proclamation as the BIA Guidance suggests, the proclamation would retain only that species of jurisdiction on the Yakama Reservation that predated Public Law 280. That would be inconsistent with the state law's declared purpose of retroceding some of the jurisdiction acquired under Public Law 280. *See* Wash. Rev. Code Ann. § 37.12.160(9)(b) ("'Criminal retrocession' means the state's act of returning to the federal government the criminal jurisdiction acquired over Indians and Indian country under federal Public Law 280[.]"). The proclamation, therefore, should be read as retaining jurisdiction other than the jurisdiction over any crime on the Yakama Reservation that involves both a non-Indian defendant and a non-Indian victim.

Nor do we think that the retention language in paragraphs 2 and 3 signals that Washington sought to retrocede all of the criminal jurisdiction it had assumed under Public Law 280. *See* OTJ Memorandum at 4 n.10. Paragraphs 2 and 3 both open by stating that Washington is retroceding jurisdiction "in part." A retrocession of all but the criminal jurisdiction existing before Public Law 280 would not have been a retrocession "in part" of the jurisdiction assumed under Public Law 280; it would have

been a retrocession in full.[11] As a consequence, the interpretation offered under the BIA Guidance would conflict with the explicitly partial nature of the retrocession proclaimed in the relevant paragraphs and would render superfluous each paragraph's concluding description of the jurisdiction that Washington was "retain[ing]." *Cf. Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 (1995) (reciting a "cardinal principle of contract construction: that a document should be read to give effect to all its provisions and to render them consistent with each other"); *United States v. Menasche*, 348 U.S. 528, 538–39 (1955) ("It is our duty to give effect, if possible, to every clause and word of a statute." (internal quotation marks and citation omitted)).

Moreover, paragraph 2 of the proclamation retroceded both "civil and criminal jurisdiction" over the operation of motor vehicles. With respect to civil jurisdiction, it provides that "the State shall retain jurisdiction over civil causes of action involving non-Indian plaintiffs, non-Indian defendants, and non-Indian victims." Proclamation 14-01, ¶ 2, at 2. If the BIA's interpretation of "and" were applied to the clause addressing retained civil jurisdiction, which immediately precedes the clause about retained criminal jurisdiction, the proclamation would permit Washington to assert civil jurisdiction only when there are (1) a non-Indian plaintiff, (2) a non-Indian defendant, *and* (3) a non-Indian victim. In other words, in a motor-vehicle collision between non-Indians, the State could entertain civil jurisdiction only if the "plaintiff" and the "victim" were different persons. Under the BIA's reading, there could be no other reasonable ground for specifying the "plaintiff" and the "victim" separately. We can discern no rationale for such an odd jurisdictional reservation. Instead, it is much more straightforward to read the "and" so that the clause reserves civil jurisdiction when any possible party is a non-Indian. That reading supports the adoption of the same reading for the adjoining clause of paragraph 2, retaining criminal jurisdiction, and the parallel clause at the end of paragraph 3. *Cf. McLane & McLane v. Prudential Ins. Co. of*

---

[11] DOI, in requesting consultation with the Attorney General under Executive Order 11435, described the proclamation as "granting *in part* retrocession of criminal jurisdiction over the [Yakama Nation]." Letter for Eric Holder, Attorney General, Department of Justice, from Kevin K. Washburn, Assistant Secretary, DOI at 1 (June 16, 2014) (emphasis added). *See also* Letter for JoDe Goudy, Chairman, Yakama Nation Tribal Council, from Kevin K. Washburn, Assistant Secretary, DOI at 1 (Dec. 17, 2014) ("Governor Jay Inslee signed a proclamation granting, *in part*, retrocession of criminal jurisdiction over the Yakama Nation's Reservation, to the United States Government." (emphasis added)).

*America*, 735 F.2d 1194, 1195 (9th Cir. 1984) (noting the presumption that words have the same meaning throughout a contract); *Envtl. Def. v. Duke Energy Corp.*, 549 U.S. 561, 574 (2007) (noting the same presumption in the statutory context).[12]

Accordingly, we believe that the text of the proclamation should be understood as retaining Washington's jurisdiction over criminal offenses when at least one party is a non-Indian.

## B.

Courts examining state retrocession under 25 U.S.C. § 1323(a) have generally focused on the acceptance of the retrocession by the United States rather than the particular terms of the State's offer of retrocession. *See United States v. Lawrence*, 595 F.2d 1149, 1151 (9th Cir. 1979) (declining to examine validity of retrocession proclamation under state law because "[t]he acceptance of the retrocession by the Secretary . . . made the retrocession effective, whether or not the Governor's proclamation was valid under Washington law" (internal quotation marks and citation omitted)). Here, however, DOI's notice simply declared that the partial retrocession "offered by the State of Washington in Proclamation by the Governor 14-01" had been accepted. Retrocession Acceptance, 80 Fed. Reg. at 63,583; *see also* Letter for Jay Inslee, Governor, State of Washington, from Lawrence S. Roberts, Acting Assistant Secretary, DOI at 1 (June 20, 2016) ("[R]etrocession was accepted according to the terms of the Proclamation of the Governor 14-01."). Moreover, DOI expressly declined to identify the scope of the phrases in the proclamation that are now in dispute, deeming them "plain" and "unambiguous." 2015 DOI Letter at 5.[13] Accordingly, the proclamation itself remains the best evi-

---

[12] ENRD also points out that a clause of the proclamation reports the Yakama Nation's "acknowledg[ment] that [Washington] would retain criminal jurisdiction over non-Indian defendants," which would be accurate (albeit incomplete) under Washington and ENRD's interpretation but would be inaccurate under the BIA Guidance. ENRD Memorandum at 22–23 (citing Proclamation 14-01, at 2). The Yakama Nation's contemporaneous statements strongly suggest that our reading of the proclamation is the one that was understood at the time.

[13] The Executive Order under which DOI accepted the retrocession directs that the Secretary of the Interior "effect[]" the retrocession through a notice in the Federal Register that "shall specify the jurisdiction retroceded." *See* 33 Fed. Reg. at 17,339. If DOI wished to dispute the Governor's view of the scope of the retrocession that Washington had offered, that would have been the time to do so.

dence of the scope of the retrocession accepted by DOI, and, for the reasons set forth above, we believe that Washington retained jurisdiction in the manner that it has claimed.

We note, however, that extrinsic evidence supports this interpretation. Several documents reflect the negotiations and internal discussions that led up to the issuance of the proclamation and its acceptance, as well as subsequent discussion of the proclamation's meaning. *See, e.g.*, ENRD Memorandum at 8–20 & app. The earliest documents demonstrate an almost immediate focus on crimes committed by non-Indians against Indians on the Yakama Reservation. For example, several months after the Yakama Nation submitted its petition for retrocession, the Washington Association of Prosecuting Attorneys wrote then-Governor Christine Gregoire expressing skepticism about the wisdom of "withdrawal of state jurisdiction over non-Indians who commit crimes against Indian victims within the reservation." Letter for Christine Gregoire, Governor, Washington, from Russell Hauge, Kitsap County Prosecuting Attorney, Washington Association of Prosecuting Attorneys (Sept. 14, 2012). And, after convening a government-to-government meeting with the Yakama Nation, as required by state law, *see* Wash. Rev. Code Ann. § 37.12.160(3), Governor Gregoire memorialized Washington's understanding that the Yakama Nation's petition "did not seek retrocession of state criminal authority over non-Indians who commit crimes against Indians." Letter for Harry Smiskin, Chairman, Yakama Nation, from Christine Gregoire, Governor, Washington at 1 (Jan. 10, 2013); *see also supra* note 12 (discussing a clause in Governor Inslee's proclamation that is most consistent with that understanding). Thus, as the discussions about retrocession began, key Washington stakeholders—state prosecutors—expressed concern about a retrocession of the State's criminal jurisdiction over non-Indians on the Yakama Reservation, and Washington separately recorded its understanding that such a retrocession would be beyond the scope of what the Yakama Nation had requested.

Some of the records also suggest that DOI's acceptance of the scope of retrocession implicitly embraced Washington's view. In its acceptance letter, DOI discussed a March 2015 FBI report analyzing "the implications of retrocession." 2015 DOI Letter at 4. That report's analysis reflected an understanding that the proclamation sought to retrocede jurisdiction only over criminal activity between Indians, and the report is cited without reservation in the DOI letter. *See* ENRD Memorandum at 18–19; 2015 DOI Letter at 4. Accordingly, even as DOI pronounced the

proclamation "plain" and "unambiguous," DOI relied on an FBI report that agreed with our reading, and DOI did not identify any contrary position taken by anyone else at the time.[14]

In any event, no document provides as clear a picture about the intended scope of the proclamation as the transmittal letter that Governor Inslee sent to DOI ten days after he signed the proclamation. Under the state statute setting out the retrocession procedure, the Governor had the exclusive authority to determine, within the outer limits of the tribe's request, the scope of Washington's proposed retrocession. The statutory process by which the Governor reached his decision included consultations with others, but the ultimate decision was his. The Governor had to make the retrocession decision within a certain period after receiving the Yakama Nation's petition and had to convene a "government-to-government meeting" with the Yakama Nation's representatives. Wash. Rev. Code Ann. § 37.12.160(3)–(4). The statute permitted the state legislature to conduct hearings and "submit advisory recommendations and/or comments to the governor," but the "legislative recommendations" would not be "binding on the governor or otherwise of legal effect." *Id.* § 37.12.160(5). The only action with legal effect was the Governor's issuance of "a proclamation" "approv[ing] the [retrocession] request either in whole or in part."[15] *Id.* § 37.12.160(4). We therefore find most probative the Governor's contemporaneous statements about what he intended his own proclamation to mean. *See* Gov. Inslee Letter at 2 ("The intent set forth in paragraph two . . . is for the State to retain jurisdiction in this area where *any* party is non-Indian[.]"); *id.* ("[T]he intent [in paragraph three] is for the State to retain such jurisdiction in those cases

---

[14] DOI described the advice from the U.S. Attorney as "key to our consideration of retrocession" and cited a letter submitted by the USAO to the Acting Deputy Attorney General. DOI Letter at 3. But the cited letter explicitly requested clarification from DOI about the scope of retrocession. Letter for Sally Quillian Yates, Acting Deputy Attorney General, Department of Justice, from Michael C. Ormsby, United States Attorney, USAO, *Re: Possible Retrocession of the Yakama Nation in Washington State* at 6 (May 5, 2015).

[15] The statute also provides that "[i]n the event the governor denies all or part of the resolution, the reasons for such denial must be provided to the tribe in writing." Wash. Rev. Code Ann. § 37.12.160(4). Four days after signing the proclamation, Governor Inslee sent a letter providing reasons for denying part of the Yakama Nation's petition. *See* Letter for Harry Smiskin, Chairman, Yakama Nation, from Jay Inslee, Governor, State of Washington, *Re: Yakama Nation Retrocession Petition* (Jan. 21, 2014). That letter did not shed light on the current dispute because it either paraphrased the sentences in question directly, or it paraphrased them while replacing "and" with "not . . . or." *Id.* at 1.

involving non-Indian defendants *and/or* non-Indian victims."). The Governor was uniquely situated to explain his own intent at the time of the proclamation.

Thus, the extrinsic evidence confirms our conclusion from the text of the proclamation and its legal context.

### III.

Neither the BIA Guidance nor OTJ has identified compelling reasons to interpret the proclamation differently. The BIA Guidance cites the 2015 DOI Letter notifying the Yakama Nation that the partial retrocession had been accepted. *See* BIA Guidance at 1. As noted above, however, that letter described the proclamation as "plain on its face and unambiguous" and deferred further interpretation to the "courts." 2015 DOI Letter at 5. The BIA Guidance also contends that its conclusion "is consistent" with one district court decision. BIA Guidance at 1 n.2 (citing *Klickitat Cty. v. U.S. Dep't of the Interior*, No. 1:16-CV-03060-LRS, 2016 WL 7494296 (E.D. Wash. Sept. 1, 2016)). The cited opinion notes that "[t]he particular areas of civil and criminal jurisdiction [for retrocession] were set forth in the proclamation . . . and that is what DOI accepted." *Klickitat Cty.*, 2016 WL 7494296, at *5. But the decision in *Klickitat County* had to do with a challenge to the proclamation's handling of the boundaries of the Yakama Reservation, and the opinion does not consider the scope of Washington's retrocession of criminal jurisdiction within those boundaries. *See id.*

OTJ reads "and" as the BIA does, *see* OTJ Memorandum at 2, and suggests that the purpose of 25 U.S.C. § 1323(a) was to encourage *full* retrocession of jurisdiction previously assumed under Public Law 280, and that the retrocession should be read to cause a "change in jurisdiction from a Federal perspective," OTJ Memorandum at 4. This argument assumes that the federal government did not already have concurrent jurisdiction where the State had assumed jurisdiction under Public Law 280.[16] In any event,

---

[16] In a January 2017 memorandum that has been made public, ENRD notified several U.S. Attorneys of the Acting Solicitor General's decision that "the litigating position of the United States is that the United States does have . . . concurrent criminal jurisdiction" over "Indian-country crimes that fall within an 'optional [Public Law] 280' State's jurisdiction under Section 7 of [Public Law 280]." Memorandum for United States Attorneys in "Optional" Public Law 280 States from John C. Cruden, Assistant Attorney General, ENRD, and Sam Hirsch, Principal Deputy Assistant Attorney General, ENRD, *Re: Concurrent Federal Criminal Jurisdiction Under 18 U.S.C. §§ 1152 and 1153 in "Optional" Public Law 280 States* at 1 (Jan. 18, 2017).

there were important changes to *state* jurisdiction effectuated by the retrocession. For example, under Public Law 280, Washington had assumed jurisdiction generally over "Indians and Indian territory, reservations, country, and lands," including certain crimes committed by Indians on trust or restricted lands. Wash. Rev. Code Ann. § 37.12.010; *see Yakima Indian Nation*, 439 U.S. at 475–76; *see, e.g.*, *State v. Yallup*, 248 P.3d 1095, 1099 (Wash. Ct. App. 2011) (upholding state conviction of Yakama tribe member for criminal motor vehicle offenses occurring on the Yakama reservation); *State v. Abrahamson*, 238 P.3d 533, 539 (Wash. Ct. App. 2010) (same for different tribal member and reservation). The proclamation reaches this significant class of crimes and retrocedes jurisdiction over them. *See* Proclamation 14-01, ¶ 3, at 2. Whether or not that change in the State's criminal jurisdiction alters the cases that the federal government may prosecute, it is still a genuine change that is significant "from a Federal perspective," OTJ Memorandum at 4, because, by curtailing state jurisdiction, it promotes tribal self-government. *See Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 62–63 (1978) (explaining that the title containing 25 U.S.C. § 1323(a) was "hailed . . . as the most important part" of the Indian Civil Rights Act of 1968, which was intended to "promote the well-established federal policy of furthering Indian self-government" and to "protect tribal sovereignty from undue interference" (internal quotation marks and citation omitted)).

OTJ also relies on practice, noting that most previous retrocessions involved "all" or "essentially all" criminal jurisdiction obtained under Public Law 280. *See* OTJ Memorandum at 3, 4 n.11. But section 1323(a) expressly contemplates that a State has discretion to retrocede "all *or any measure* of the criminal or civil jurisdiction, or both, acquired by such State pursuant to the provisions of [Public Law 280]." 25 U.S.C. § 1323(a) (emphasis added). Finally, OTJ suggests that DOI has "broad authority to determine on what terms the United States would resume" jurisdiction. OTJ Memorandum at 5. While that is true as far as it goes, the text of section 1323(a) does not suggest that, in deciding whether to "accept a retrocession by any State," the United States may accept *more* than the State has offered.

OTJ further maintains that DOI, rather than the Department of Justice, "should determine the scope of the retrocession." OTJ E-mail at 1. DOI effectively set the scope of the retrocession by accepting the proclamation, and our analysis does not disparage DOI's authority over that acceptance. *See* Retrocession Acceptance, 80 Fed. Reg. at 63,583. Nor does

our interpretation detract from DOI's authority, by the act of acceptance, to make a State's offer effective. *See* OTJ Memorandum at 4–7. Because our analysis of the proclamation is being provided at DOI's request, comes after DOI accepted the offer of retrocession, and concerns the text of the proclamation accepted, it does not trench on any power by DOI "'to . . . define and construe'" section 1323(a), which confers the authority to accept offers of retrocession. *Oliphant v. Schlie*, 544 F.2d 1007, 1012 (9th Cir. 1976) (quoting *Brown*, 334 F. Supp. at 541), *rev'd on other grounds sub nom. Oliphant v. Suquamish Indian Tribe*, 435 U.S. 191 (1978).

## IV.

For these reasons, we conclude that, under the proclamation making a partial retrocession, Washington has retained criminal jurisdiction over an offense on the Yakama Reservation when the defendant or the victim is a non-Indian, as well as when both are non-Indians.

DANIEL L. KOFFSKY
*Deputy Assistant Attorney General*
*Office of Legal Counsel*